PROYOSTY, J.
The relators, J. gully Martel and others, brought suit claiming to be the owners of and to be entitled to the possession of, one-fifth, undivided, of a certain tract of land, and of all the oil the land had theretofore produced or would thereafter produce from certain wells driven on it by defendant, and they prayed that a certain lease which defendant pretended to hold to the said land be annulled in so far as said one-fifth was concerned, and that they be recognized as owners of and be placed in possession of said one-fifth of said lands and oil. They prayed, further, that one-fifth of the oil theretofore produced by said land, or that might thereafter be produced by it, be judicially sequestered.
The court granted an order of sequestration accordingly, and thereupon the parties en« tered into the following agreement;
*240 J. Sully Martel et al. v. Jennings-Heywood Oil Syndicate et al. No. 1,752, 18th Dist. Court, Acadia Parish, La.
“In the above numbered and entitled cause a writ of judicial sequestration issued, where-under the product of certain oil wells has been seized, and an application having been made by the defendant to dissolve said sequestration on bond, it is now agreed, to obviate bonding and further complications under the writ, that one-fifth of the net proceeds of the product of the said oil wells shall be deposited in the Bank of Acadia, at Crowley, to await the final determination of this cause; and said net amount shall be arrived at by deducting one-fifth of the actual and necessary operating expenses from one-fifth of the gross proceeds of the produce of said wells.
“It is further agreed that all parties hereto may, at their own expenses, appoint representatives to keep check and account of the oil produced as aforesaid, and such representatives shall have every facility extended them of examining into the output of the well and the sale of oil therefrom, and they shall have access to all books, checks, papers, and memoranda bearing upon and affecting said production and sales.
“It is further agreed that all parties hereto shall have the right of providing private locks and keys for all gate valves on all pipe lines, tanks, etc., and that when any oil is to be gauged the producer shall give notice to the opposite parties herein represented, who shall have tie right to be present when the gauging is done, each party to be furnished with gauge tickets, showing correct and accurate gauges, same to be duly signed by the representatives of the parties hereto.
These provisions regarding gauging, inspection, etc., are to apply to plaintiffs and the several defendants solely, and are not intended to include the defendant inter sese.
“It is further agreed that the failure of one of the parties defendant to comply with his agreement shall not operate as a forfeiture to the others.
“Done and signed in duplicate, with reservation of all legal rights, at Crowley, La., this 28th day of July, 1903.”
The trial court decided the case against relators and dissolved the sequestration. On appeal, this court decided in favor of relators and reinstated the sequestration. But the court ordered that the sequestered oil be not delivered to relators until they had reimbursed to defendant the expenses of producing it. 38 South. 612, 114 La. 903.
From the moment this judgment became final the situation was that the relators were the judicially recognized owners of the land in question, and of the oil it was producing, in indivisión with the defendant, and entitled to hold possession of it jointly with defendant; and the situation was that, if the co-owners could not agree for the management of the property, they had but one thing to do, and that was to proceed to a partition, and, if need be, have the property administered by the court pending the partition proceedings.
Instead of bringing a suit for partition, the relators applied for a writ of possession, asking the court to- place them in possession of the land and of the oil theretofore sequestered. The trial court refused, and thereupon relators applied to this court for a mandamus. This court refused the mandamus, saying that an owner in indivisión must possess jointly with his co-owners, and cannot have possession of any specific part of the property, and that the sequestered oil could not be delivered to relators until the expenses of producing it had been paid, such having been the decree of this court. However, as the quantity of the sequestered oil appeared to be greatly in excess of any amount that might be needed for securing the reimbursement of the expenses incurred by defendants in producing it, this court added that, inasmuch as the sequestration was not one of right, but merely of discretion — a mere judicial sequestration — the trial court might, if it so desired, reduce the amount thereof; that is to say, release part of the sequestered oil.
Thereupon the relators applied for the sequestration of the entire oil that was being produced on the land. This application they made, not as a new suit, but as an incident to the suit that had been--, terminated by final judgment. The judge having refused the request, relators now, in the present proceeding, again apply to this court for a mandamus. ■
They argue that, inasmuch as it is not possible to sequester one undivided fifth of the oil the whole of it must be sequestered. *241 The answer is, In the first place, that the reopening of the terminated and closed suit is not the proper proceeding for the relief of the relators; that no proceedings can be had in said suit, except such as may be necessary for the execution of the judgment; that the relators, being co-owners of the property, are co-owners of all the oil it is producing, and as such are as much entitled to the actual possession of the oil as the defendants are; and if the defendants refuse to recognize such rights, as now finally recognized by the judgment of this court, the relators have their remedy. The remedy of the relators is a suit in partition, and, if need be, a sequestration of the property as an incident to the partition. The answer is, in the second place — as the learned judge a quo very well observed — that if this oil was not originally so divisible by nature that one-fifth of it could be seized, just as one-fifth of a sum of money may be seized, that the relators made it so by their agreement, transcribed above, whereby they expressly consented that it be so divided.
The situation, then,- is 'that all the oil sequestered up to the termination of the suit remains in gremio legis to answer for the expenses of producing it, unless the judge, finding the quantity too great, concludes to direct the sheriff to deliver part of it to the relators; that any oil that has been sequestered since tlie judgment of this court terminated the suit, and with it the life of the writ of sequestration, has been thus sequestered under a defunct suit, and must be delivered to the relators; and, finally, that the relators’ right to the property and to the oil it is producing, and to the possession of both, is of the same dignity as that of the defendant, and, if denied, is subject to be enforced by appropriate remedies, but that this must be by some new suit, and not by an attempted prolongation of the terminated suit.
Writs refused.