For the reasons assigned, the judgment appealed from is affirmed with costs.

O'NIELL, C. J., absent.

169 So. 436

**STINSON v. MARSTON et al.**

**HUNT v. SAME.**

No. 33868.

May 25, 1936.

Rehearing Denied June 30, 1936.

Irion & Switzer and Malcolm W. Feist, all of Shreveport, for appellants.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

Polk & Robinson, of Alexandria, for N. K. Vance, amicus curiæ.

LAND, Justice.

Because of similarity of issues, these two cases were consolidated in the district court.

Plaintiffs have appealed from a judgment sustaining an exception of no cause or right of action in each of the consolidated cases.

It appears from the allegations of the petition that, prior to her death on May 16, 1935, Mrs. Nina Vance, deceased, surviving widow of W. C. Vance, was the owner of a 63/96 interest in Willow Chute Plantation in Bossier parish, with the usufruct of the remainder, of which plaintiff Mrs. Grey Stinson owned a 2.75/96 interest, and plaintiff Mrs. Larry Vance Hunt owned a 19.25/96 interest, subject to the usufruct.

As shown by the allegations of the petition and annexed documents, Mrs. Nina Vance, on September 26, 1934, leased to defendants Collier H. Minge and William

W. Marston the Riverside Plantation in Bossier parish for the term commencing on January 1, 1935, and terminating on December 31, 1935, and, as part of the consideration for that lease, granted to the lessees an option to lease the Riverside and Willow Chute Plantations in that parish for the term of five years, commencing January 1, 1936, at an agreed rental for both places of $4,000 per annum, the option to be exercised by the lessees prior to December 31, 1935.

It is affirmatively alleged by plaintiffs that, by instruments dated December 3, 1935, defendants formally exercised the option granted upon both plantations, in strict conformity to the option, as set forth in the lease of September 26, 1934.

(1) Plaintiffs, however, attack the lease contract and the option to lease, and the exercise of the option by defendants on the following grounds:

"That said purported option, if it ever had any effect, which is denied, expired on the death of Mrs. Nina Vance, because any lease contract or option to lease contract ceases of right at the expiration of the usufruct."

■ "In the alternative only, petitioner shows that defendants have no right to the possession of Willow Chute Plantation under the supposed lease for the following reasons:

"That on or about October 17, 1935 the defendants addressed and delivered to Norwood Vance and Allen Rendall in their capacity as co-executors of the estate of Mrs. Nina Vance, a notice that they did not exercise their option to lease Willow Chute Plantation."

It is not alleged by plaintiffs that they accepted, or that the executors of Mrs. Vance accepted, the offer of defendants to release the Willow Chute Plantation from the option to lease, prior to the exercise of the option by defendants, which was made by them before the option expired. The option therefore remained to be exercised by defendants and was timely exercised by them.

■ (2) Since there is no allegation that the possession of defendants was forcibly obtained, or that the executors of the estate of Mrs. Nina Vance have sought to prevent such possession, the contract of lease must be considered by the executors as binding upon the succession of Mrs. Vance and her forced heirs, one of whom is the plaintiff Mrs. Larry Vance Hunt.

Plaintiffs alleged that the succession of Mrs. Nina Vance is still being administered and there is no allegation that they act as the representatives of the succession or of her co-owners. To the contrary, the executors of the estate are made parties defendant.

Under these circumstances, the plaintiffs, Mrs. Hunt and Mrs. Stinson, have no standing in court, except to the extent of the former's alleged ownership of an undivided 19.25/96 interest, and of the latter's alleged ownership of an undivided 2.75/96 interest.

■ (3) The contention of plaintiffs that the option expired on the death of Mrs. Nina Vance, because the lease, or the op-

tion to lease, ceased of right at the expiration of the usufruct is without merit, in our opinion.

In the act of lease of the Riverside Plantation, executed by Mrs. Nina Vance and defendants on September 26, 1934, it is stipulated that this lease shall commence on January 1, 1935, and terminate December 31, 1935; and that the lessees shall pay to the lessor a rental of $1,250, represented by a note executed by the lessees dated October 15, 1935, and bearing interest at the rate of 6 per cent. per annum from maturity.

It is further stipulated in the act of lease that: *"In consideration of the endorsement of this note by J. G. Marston,* the Lessor does by these presents waive and release such lessor's lien as she may have on any property that may be placed on the premises leased, including crops that may be grown thereon.

*"As a further consideration* Lessor hereby grants to Lessees *the option to lease at any time prior to December 31st, 1935,* the following described property:

*"Riverside Plantation*—Bossier Parish, Louisiana, situated approximately three (3) miles south of Benton, Louisiana;

*"Willow Chute Plantation*—Bossier Parish, Louisiana, situated approximately two (2) miles south of Benton, Louisiana; said lease to be for a period of five years commencing *January 1st, 1936,* and terminating December 31st, 1940, the annual rental for both of these plantations to be four thousand and no/100 ($4,000.00) dollars, payable on or before October 15th, of each year.

"It is further agreed and understood *that no timber shall be cut from these plantations* by lessees other than necessary for operating said plantations (such as fencing, fuel for tenants, etc.).

*"This contract of lease, together with the option to renew contained therein, shall extend to the heirs, executors, administrators and assigns of the parties hereto."* (Italics ours.)

Plaintiffs cite article 1810 of the Civil Code as authority for the proposition that the option which was granted by Mrs. Vance lapsed at her death. This article provides in part that: "If the party making the offer, die before it is accepted, or he to whom it is made, die before he has given his assent, the representatives of neither party are bound, nor can they bind the survivor."

Not only was the offer to lease accepted, but the offer to grant the option in this case was accepted by Mrs. Vance and defendants, at one and the same time, and in one and the same contract. Indeed, the option to lease both plantations for five years, commencing January 1, 1936, was granted as *"a further consideration"* of the original lease of the Riverside Plantation, commencing January 1, 1935, and terminating December 31, 1935.

The option in this case is a contract between the parties *that it will not be withdrawn before a definite time;* and, as stated in the contract itself, it extends to the heirs, executors, administrators, and assigns of the parties. Article 1810 of the Civil Code, therefore, has no application to the present case.

(4) As to plaintiffs' claim that the lease should be canceled.

A person, although not the owner of the entire interest in a piece of property, may execute a lease covering the same, and the lessee cannot dispute the lessor's title, the lessor being obligated to maintain the lessee in possession.

The defendants in this case cannot deny their lessor's title and refuse to pay rent under the lease. As was said in Spence v. Lucas, 138 La. 763, 770, 70 So. 796, 798: "When Silliman Lucas entered into the contract of lease with R. W. Davis, she was the owner, in indivision, with her four children of the property leased. Nevertheless she leased the whole property to Davis. The lease was valid; for ownership is not essential to make a valid contract of lease. Article 2682 provides that:

" 'He who lets out the property of another, warrants the enjoyment of it against the claim of the owner.'

"And leases have been enforced against lessees where the lessor was not the owner of the real property leased. Chase v. Turner, 10 La. 19; Tippet v. Jett, 10 La. 359; Nicholls v. Byrne, 11 La. 170; Dennistoun v. Walton, 8 Rob. 211; Sientes v. Odier, 17 La.Ann. 153.

"Silliman Lucas, the lessor, and her transferees in title, with notice of the existence of the lease, could not sue to annul the lease on the ground that she was not the owner in whole or in part of the property at the date of the lease. And the interveners, the lessees, would not be permitted to sue them for the dissolution of the lease if they were not disturbed in their possession."

The contract of lease and option was recorded in Bossier parish in which both plantations are situated. The annual rental for both plantations is the lump sum of $4,000 per annum, without specifying the rental due on each plantation. The lease covers both plantations, and is clearly an indivisible obligation.

The plaintiffs seek to have the lease canceled as to the Willow Chute Plantation, but do not seek to have the lease canceled as to the Riverside Plantation. Even had plaintiffs been parties to the lease, they could not have the contract canceled as to part and remain in force and effect as to part. Smith v. Sun Oil Company, 165 La. 907, 922, 116 So. 379.

(5) Plaintiffs have prayed that defendants be enjoined from doing any act which will disturb plaintiffs in their rights of possession as partial owners.

In the present case, plaintiffs do not desire to cultivate the plantation, but are merely seeking to enjoin the defendants, who are holding under co-owners of plaintiffs, from cultivating the plantation, which is a preservation of the property. Without cultivation, the plantation will grow up in Johnson grass, the ditches will be stopped up, and the buildings will be deteriorated.

The courts of this state have always recognized the right of a co-owner to use the property held in common for the purposes for which it is destined, such as the cultivation of farm lands of the sort

involved in this controversy. Becnel v. Becnel, 23 La.Ann. 150; Toler v. Bunch, 34 La.Ann. 997; Moreira v. Schwan, 113 La. 643, 37 So. 542.

Every co-owner has the right to insist upon the use of the entire property, for without the use of the entire property, such as the cultivation of a plantation, no co-owner can receive those returns to which he is entitled according to his ownership.

The co-owner is further entitled to see that the property is preserved or maintained without deterioration; and when the property owned in common is a plantation, it is obvious that the whole plantation must be cultivated to prevent deterioration or loss to the owners.

The plantation in this case is being used as a plantation and cultivated in the production of crops ordinarily raised upon it.

There has been no case in this state allowing an injunction to one co-owner against another co-owner enjoining the other co-owner from cultivating a plantation which had been used as such, the cultivation of the plantation being merely an act of preservation.

In such a case, as said in Moreira v. Schwan, 113 La. 643, 647, 37 So. 542, 543: "Plaintiffs' remedy is by suit for a partition and settlement of accounts, or for a division of profits, if any. Until the accounts be settled, the question of debt vel non between the owners in indivision cannot be determined."

Injunctions have been granted only in cases where the cutting of timber will change the character of the place and would amount to waste; or where the property had been destined for use as a plantation and the drilling of an oil well would have been an innovation and the draining of oil would constitute waste. Cotten v. Christen, 110 La. 444, 34 So. 597; Breaux v. Albert Hanson Lumber Company, 125 La. 421, 51 So. 444; Gulf Refining Company v. Carroll, 145 La. 299, 82 So. 277.

The United Gas Public Service Company v. Arkansas-Louisiana Pipe Line Company, 176 La. 1024, 147 So. 66, was a suit in which one co-owner sought to enjoin a person holding a lease from other co-owners from drilling an oil and gas well on the land. The property had little, if any, value for farming purposes, but it did have great value for mineral purposes and the lands were being drained. This court refused to allow an injunction in that case, stating as its conclusion, 176 La. 1024, at page 1036, 147 So. 66, 69, that: "The apparent object of relator's suit is to destroy, and not to preserve, the property in dispute. By refusing to grant the injunction sought, the court below has rendered the accomplishment of that object impossible. There is nothing in the record that would justify us in reversing its decision."

The above cases, relied upon by plaintiffs, appellants, have no application to the case at bar.

It is therefore ordered that the judgment appealed from in each of the consolidated cases be affirmed, and that plaintiffs, appellants, pay all costs.

O'NIELL, C. J., absent.